FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

98 MAR 25 PM 3:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

Doug Black Construction, Inc., )
    Plaintiff(s); )
     )
-vs.- ) No. CV-96-P-0019-S
     )
City of Alabaster, Alabama, )
    Defendant(s). )

ENTERED
MAR 27 1998

Opinion

    Plaintiff Doug Black Construction, Inc. ("Black"), and defendant City of Alabaster ("the City") have filed cross-motions for summary judgment that were considered by this court on September 17, 1997. For the following reasons, Black's motion is due to be DENIED and the City's motion is due to be GRANTED.

Facts[1]

    The City of Alabaster is located in Shelby County, Alabama, and is one of several small cities located on the outskirts of the Birmingham metropolitan area. Approximately one half of the City's residents receive sewer services as part of the City's central sanitation system, while the remaining residents rely upon septic tanks for their sanitation requirements. In March 1990, the Alabaster City Council approved Ordinance 90-255A, which provided that "[w]hen the development of a subdivision will result in an increased burden on the city sewer system, or will necessitate improvements to the sewer system, including . . . the extension of lines, the applicant for approval of the subdivision plat shall pay a sewer impact fee prior to final plat approval." In

---

1. The parties have agreed that no material facts are in dispute.

August 1990, the Council set the sewer impact fee at $500 per structure. In April 1996, the Council amended the applicable ordinance to raise the sewer impact fee to $1000 per structure. Under the terms of the ordinances, all sewer impact fees collected by the City are maintained in a separate account to be used solely for "increased costs or sewer improvements necessitated by the construction." Since the initiation of the sewer impact fee, the City has received approximately $2.3 million in such fees and has expended approximately $1.5 million from the sewer impact fund.

Plaintiff Doug Black Construction, Inc., has constructed at least six residences in the Forest Hills subdivision within the City. In order to obtain building permits from the City, Black paid a sewer impact fee of $1000 for each residence. Although Forest Hills has been developed with "cap sewers,"[2] residents currently use septic tanks, since the municipal sewer system has not yet been extended to Forest Hills. At present, the nearest access to the City's sewer system is approximately two miles from Forest Hills. Although $22 thousand in sewer impact fees relating to Forest Hills properties has been paid by Black and others, the parties do not seriously dispute that the cost of extending municipal sewer lines to Forest Hills will significantly exceed $22 thousand.

In January 1996, Black filed this class action on behalf of all persons required by the City to pay sewer impact fees, alleging that the City has no authority from the Alabama legislature to

---

2. Cap sewers are often included in the development of a new subdivision, even if the subdivision is not yet tied into the main sewer system. While the homeowners must use septic tanks until the municipal sewer system is extended to the subdivision, the subdivision is constructed with future access in mind, such that the complete system of sewage pipes for the subdivision is installed at the outset by the subdivision developer. When the municipal sewer lines are later extended to the subdivision, the "cap sewer" system is simply connected to the trunk municipal sewer line.

require the payment of such fees. Black also alleges that, to the extent sewer services are not provided to the properties for which the fees are paid, the exaction of sewer impact fees constitutes a "taking" of property without just compensation under the federal and state constitutions. Black seeks reimbursement of all sewer impact fees.

## Analysis

### I. Black's Motion for Summary Judgment

Black's motion for summary judgment is due to be denied because Black cannot establish that the City's imposition of the sewer impact fees fails to substantially advance legitimate state interests.

The United States Supreme Court has long recognized the authority of state and local governments to engage in land use planning. *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926). "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 413 (1922). A land use regulation does not effect a taking if it "substantially advance[s] legitimate state interests" and does not "den[y] an owner economically viable use of his land." *Agins v. Tiburon*, 447 U.S. 255, 260 (1980). As the foregoing language indicates, a municipality's decisions concerning land use traditionally have been reviewed under a liberal "rational basis"-type standard, with the plaintiff bearing the burden of proof as to the state or municipality's "legitimate state interests."

In the last decade, the Court has substantially refined its land use regulation jurisprudence. In *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), the Court set forth the proper approach to be followed in analyzing the constitutionality of a land use

3

decision. First, a court must determine whether an "essential nexus" exists between the "legitimate state interest" and the permit condition exacted by the regulatory body. *Id.* at 837. If the court finds that such a nexus exists, it must then decide the required degree of connection between the exactions and the projected impact of the proposed development. *Id.* at 838. The Supreme Court reached only the first question in *Nollan*, finding no sufficient nexus where the Coastal Commission demanded a lateral public easement across the Nollans' beachfront lot in exchange for a permit to replace an existing bungalow with a three-bedroom house. *Id.* at 837.

Seven years later, in *Dolan v. City of Tigard*, the Court considered the degree to which the regulatory authority's exactions bore the required relationship to the projected impact of the proposed development. 512 U.S. 374, 388 (1994). As a condition for the approval of building permits allowing Dolan to remodel and expand her plumbing supply business, the City of Tigard demanded that Dolan dedicate to the city all portions of her property located within the floodplain of the adjacent creek for use as a greenway, pedestrian walkway and bicycle path. *Id.* Although the Court acknowledged the "essential nexus" between the city's interest in providing greenway and reducing traffic congestion, *id.*, the Court concluded that the city had failed to establish that its demands of Dolan were "roughly proportional" to the benefits to be derived from the exactions. *Id.* at 391. While "[n]o precise mathematical calculation is required, [a city] must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Id.* Thus, in *Nollan* and *Dolan*, the Court shifts to the municipality--in some cases-- the burden of establishing the presence of "legitimate state interests" and the "rough

4

proportionality" between the specific exactions and those interests.

Black and the City apparently agree that *Dolan* is controlling in the case at bar, and each of the parties has provided this court with extensive argument as to whether or not the Alabaster city council has complied with *Dolan*'s requirement of an "individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Id.* at 391. However, this court's review of the *Dolan* decision indicates that it is simply inapplicable here. Early in his majority opinion in *Dolan*, Justice Rehnquist distinguished the *Dolan* situation from the traditional approach taken in *Euclid*, *Pennsylvania Coal,* and *Agins*, which "involved essentially legislative determinations classifying entire areas of the city." *Id.* at 385. Unlike the generally applicable zoning or other regulations upheld in *Euclid* and its progeny, *Dolan* addressed the standard to be followed by a city when it makes an *individualized* decision with respect to an application for a building permit for a *specific parcel*. *Id.* Moreover, the *Dolan* Court acknowledged that, absent an "adjudicative decision . . . on an individual parcel," the burden of proof "properly rests on the party challenging the regulation to prove that it constitutes an arbitrary regulation of property rights." *Id.* at 391 n.8.

In the case at bar, Black challenges the Alabaster city council's decision, in Municipal Ordinance 96-401, to require the payment of a $1000 sewer impact fee by *every* building permit applicant in Alabaster, to the extent that the proposed construction is likely to increase the drain on the city's sanitation system. The amount of the fee is not adjusted on a parcel-by-parcel basis, nor has the City required Black to modify his construction proposal, to dedicate a portion of his property to the City, or to otherwise comply with any specific requirements not

5

generally applicable to all other permit applicants in Alabaster. Indeed, Black himself apparently acknowledges that the City is making no "individualized" decision to charge the $1000 sewer impact fee to him; Black's complaint asserts claims on behalf of a class of plaintiffs consisting of "all those persons and entities which have had to pay and will have to pay to Alabaster the sum of $1000 for a sewer impact fee in order to obtain a building permit from the city of Alabaster." Complaint at ¶ 16. The court finds that the Alabaster city council's decision to establish a $1000 sewer impact fee is most accurately characterized as a legislative, rather than an adjudicative, decision by the City. Like the "generally applicable zoning regulations" that "classif[ied] entire areas of the city" in *Euclid* and its progeny, *see Dolan,* 512 U.S. at 385, 391 n.8, Alabaster's sewer impact fee is a generally applicable exaction payable by a broad class of building permit applicants.

Because the specific factual requirements of *Dolan* are not met here, this court is bound to follow the traditional approach developed in *Euclid, Pennsylvania Coal,* and *Agins* in considering Black's motion for summary judgment.[3] Under that approach, the burden is on the plaintiff to show that the regulatory authority's decision is not substantially related to a legitimate government interest. Black, in moving for summary judgment, erroneously assumed that *Dolan* transferred the burden of proof in this case to the City. Because Black has not shown the City's exactions to be arbitrary or otherwise insubstantially related to a

---

3. The court is aware that the Supreme Court has, as yet, provided little guidance as to the applicability of *Dolan* to cases involving legislative, rather than adjudicative, takings questions. *See Parking Ass'n of Georgia, Inc. v. City of Atlanta,* 515 U.S. 1116 (1995) (dissent of Justices Thomas and O'Connor from denial of *certiorari,* noting the lower courts' split as to the impact of *Dolan* on legislatively enacted regulations). However, since the language of the majority opinion in *Dolan* clearly provides that the burden of proof is to shift to the regulatory body only in adjudicative cases, this court has applied the same limitation in addressing these motions.

legitimate state interest, Black's motion is due to be DENIED.

## II. The City's Motion for Summary Judgment

All of the foregoing discussion of the controlling Supreme Court precedent in regulatory takings cases is equally applicable to the City's motion for summary judgment. Although the City argues that it has made the *Dolan* "individualized determinations" of the relation, both in nature and extent, of the sewer impact fee charged to the benefits expected to be provided, the court finds that no such individualized determinations by the City are required here. As set forth above, the court finds that Alabaster's establishment of a $1000 sewer impact fee was a legislative, rather than an adjudicative, decision. If the exaction is substantially related to an important state interest, then summary judgment in favor of the City is appropriate.

This court has no hesitation in finding that the exaction of a $1000 sewer access fee from building permit applicants whose projects will likely make demands on the Alabaster sanitation system is substantially related to the City's legitimate interest in providing a comprehensive central sanitation system for its neighborhoods. As this court noted in dismissing Black's equal protection claim, imposing the costs of improvements to the sewer system necessitated by new development on the owners of the newly developed property, particularly when those paying up-front will be credited against any future levies, is not a violation of equal protection. *See South Shell Inv. v. Town of Wrightsville*, 703 F. Supp. 1192 (E.D.N.C. 1988), *aff'd*, 900 F.2d 255 (4th Cir. 1990). While this court might be reluctant to grant summary judgment in favor of the City if the City had no provision for refunding the $1000 sewer impact fees of residents whose property the City determined never to connect to

the municipal sewer system, Black has acknowledged that such refunds will be made. Plaintiff's Brief at 7. Therefore, since it appears likely that all residents of Alabaster who have paid a $1000 sewer access fee can expect either to receive sewer service or to receive a refund in the future, the court has determined that the City of Alabaster's summary judgment motion is due to be GRANTED.

## Conclusion

Since no facts are in dispute, Black has failed to show that the City's exaction is arbitrary or otherwise unrelated to a legitimate state interest, and the court is convinced that the exaction of $1000 sewer impact fees by the City is substantially related to the City's interest in planning a central, comprehensive plan for sanitation, plaintiff's summary judgment motion is due to be denied, and defendant's summary judgment motion is due to be granted. The court declines to exercise jurisdiction over plaintiff's state law claim, and dismisses that claim without prejudice to its being presented in an appropriate state court.

Dated: March 25, 1998

Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. James W. Porter II
    Mr. R. Shan Paden